UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GUERLYNE FELIX, as Administratrix of
the Estate of MATTHEW FELIX,

                     Plaintiff,

   -against-

COUNTY OF NASSAU, POLICE OFFICER
ALEJANDRO PEREZ, POLICE OFFICER
PETER LANG, POLICE OFFICER JOHN
GIOVANIELLO, and POLICE OFFICER
ROBERT PSOMAS, individually and in their
Capacities as members of the Nassau County
Police Department,

                     Defendants.
-----------------------------------------------------------------X

21-CV-676 (JMA)(SIL)

**MEMORANDUM AND ORDER**

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this section 1983—wrongful death action is a motion to quash a subpoena brought by the non-party New York State Office of the Attorney General ("OAG"). *See* DEs [60, 61, 62]. The motion presents, as at least one judge in this district has characterized it, a "novel and complex question of constitutional law," namely, whether the OAG may avoid the subpoena by invoking the doctrine of sovereign immunity. *Cuomo v. New York State Assembly*, 22-MC-3027 (LDH)(TAM), 2023 WL 4714097, at *18 (E.D.N.Y. Jul. 21, 2023) (granting motion to quash on other grounds). For the reasons set forth below, the Court holds that it may, and grants the motion to quash on this basis.

1

I.     BACKGROUND

The following facts are relevant to the pending motion. On July 8, 2015, then-Governor Andrew Cuomo issued an executive order, providing in relevant part:

> WHEREAS, there have been recent incidents involving the deaths of unarmed civilians that have challenged the public's confidence and trust in our system of criminal justice; and
>
> WHEREAS, public concerns have been raised that such incdents cannot be prosecuted at the local level without conflict or bias, or the public perception of conflict or bias; and
>
> \* \* \*
>
> WHEREAS, the foregoing compels me to conclude that my constitutional obligations provide that in cases where an issue of a real or perceived conflict of interest exists, and to ensure full confidence in our system of criminal justice, a special prosecutor should be appointed with respect to such incidents. Such appointment of a special prosecutor will supersede in all ways the authority and jurisdiction of a county district attorney to manage, interpret, prosecute or inquire about such incidents; and
>
> NOW, THEREFORE, I, . . . hereby require the Attorney General (hereinafter, the "special prosecutor") to investigate, and if warranted, prosecute certain matters involving the death of an unarmed civilian, whether in custody or not, caused by a law enforcement officer. . . .
>
> FURTHER, for any matter covered herein, the special prosecutor shall have the powers and duties specified in subdivisions 2 and 8 of section 63 of the Executive Law for purposes of this Order, and shall possess and exercise all prosecutorial powers necessary to investigate, and if warranted, prosecute the incident. The special prosecutor's jurisdiction will displace and supersede the jurisdiction of the county district attorney where the incident occurred; and such county district attorney shall have only the powers and duties designated to him or her by the special prosecutor as specified in subdivision 2 of section 63 of the Executive Law;
>
> FURTHER, for any matter covered herein, the special prosecutor shall conduct a full, reasoned and independent investigation including, but not limited to, (i) gathering and analyzing evidence, (ii) conducting witness interviews, and (iii) reviewing investigative reports, scientific reports, and audio and video recordings;

\* \* \*

>  FURTHER, for any matter covered herein, the special prosecutor will provide . . . a report on all cases where, (i) the special prosecutor declines to present evidence to a grand jury regarding the death of a civilian . . ., allegedly caused by a law enforcement officer, or (ii) the grand jury declines to return an indictment on any charges. The report will include, to the extent possible and lawful, an explanation of that outcome and any recommendations for systematic reform arising from the investigation.

N.Y. Exec. Order 147.  *See* DE [60-3, 61-4].

On February 25, 2020, Plaintiff's decedent, Matthew Felix, was fatally shot in an incident involving the individual Defendants, who are Nassau County Police Officers. Then on March 2, 2020, Governor Cuomo issued Executive Order 147.33 conferring jurisdiction on the OAG to investigate potential criminal acts in relation to the shooting and prosecute if appropriate. *See* N.Y. Exec. Order 147.33, DE [60-2]. An investigation followed, the OAG declined to prosecute, and on June 18, 2021 a report was issued. *See* DE [60-5] (the "Report").

This section 1983-wrongful death litigation was commenced with the filing of a Complaint on February 8, 2021, prior to the Report's issuance. *See* DE [1]. A Second Amended Complaint was filed on October 2, 2022 after a change in counsel. *See* DE [43, 48].

During discovery, while in Court, Plaintiff served a subpoena on the OAG, who had appeared on a prior motion to compel. The subpoena seeks, "All documents generated + discovered + received pursuant to the shooting of Matthew Felix on 2/25/20." *See* DE [60-6]. The OAG objected and met with Plaintiff's counsel to see whether an accommodation could be worked out concerning the documents sought,

3

and when it could not, this motion followed consistent with the briefing schedule set by the Court. *See* DE [58, 59, 60, 61, 62]. In support of its motion the OAG makes several arguments: (1) the OAG is shielded from the subpoena by virtue of New York State's sovereign immunity; (2) the material sought is not relevant and is disproportional to the needs of the case; and (3) the material sought is protected the attorney-client, law enforcement and deliberative process privileges and the attorney work product doctrine. *See* DE [60-1]. In raising these objections, the OAG points out that there are approximately 5100 responsive documents at issue, and that of those, approximately 5000 were obtained from other governmental entities, such as the New York Police Department ("NYPD") as NYPD officers were first to arrive on the scene, the Nassau County Police Department, a department of Defendant Nassau County, and the Office of the Chief Medical Examiner in Queens ("OFCME"). *See* DE [60-2] (Declaration of Tamikka Pate) ¶ 7. For the reasons set forth below, the Court concludes that the OAG is entitled to invoke the doctrine of sovereign immunity and avoid the subpoena. As a result, the motion to quash is granted.

## II. DISCUSSION

Before turning to the merits of the OAG's sovereign immunity argument, the Court notes that it would be difficult to assess its relevance/disproportionality and privilege objections without more information. No privilege log was ever served, and while there may be valid relevance arguments as to certain documents, it is hard to imagine that in a litigation concerning an alleged wrongful death that none of the documents concerning the investigation of the events surrounding the death are

4

relevant. Finally, while the OAG claims that there are approximately 5100 responsive documents that would have to be reviewed in order to respond to the subpoena, the Court is skeptical that such a review would be, in and of itself, unreasonable given the nature of the case. In any event, before the OAG could be ordered to undertake the work required to allow the Court to evaluate these arguments, the sovereign immunity issue must be addressed first.

A motion to quash is governed by Fed. R. Civ. P. 45(d). A subpoena must be quashed where it requires "disclosure of privileged or otherwise protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii); *Cuomo*, 2023 WL 4714097, at *6. In other similar contexts, sovereign immunity has been the type of privilege or protection applied to grant a motion to quash. *See Catskill Dev., L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) (quashing subpoenas on the basis of tribal immunity).

State sovereign immunity recognizes the "residuary and inviolable sovereignty" that states retain under the Constitution. *Alden v. Maine*, 527 U.S. 706, 715 716 17, 119 S. Ct. 2240, 2247, 2248 (1999) (quoting The Federalist Papers No. 39 at 245 (James Madison) and No. 81 at 487-88 (Alexander Hamilton) for a similar proposition, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent"* and "is now enjoyed by the government of every State in the Union" (emphasis in *Alden*)). The Second Circuit has recognized two "species" of state sovereign immunity. Initially, the Eleventh Amendment identifies an immunity of a state's treasury from claims for damages brought by private

5

entities. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) (citing *Seminole Tribe of Fla v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996)). This immunity protects a state's "dignity and fiscal integrity from federal judgments" and operates as a limit on the federal courts' Article III powers. *Id.* (citing *Alden*, 527 U.S. at 716-21, 119 S. Ct. at 2248-50; *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 240 (2d Cir. 2006); *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004)). States, however, also have a broader sovereign immunity, beyond that addressed in the Eleventh Amendment, applying to all private suits—in state or federal court. *Beaulieu*, 807 F.3d at 483. This broader immunity is a "fundamental aspect" of state sovereignty that predates the Constitution and is not limited by the Eleventh Amendment. *Alden*, 527 U.S. at 713, 119 S. Ct. at 2246-47. Sovereign immunity applies both to the states and their agencies. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 903 (1997).

Further, the immunity applies to more than to just liability. Rather, the doctrine obtains in all proceedings where the result could be an order restraining the moving governmental entity or requiring it to act. *See Dugan v. Rank*, 372 U.S. 609, 620, 83 S. Ct. 999, 1006 (1963). And at least one court in this Circuit has applied the doctrine to quash non-party subpoenas. *See Catskill Dev.* 206 F.R.D. at 86-87, 90 (recognizing a dearth of authority on this issue and quashing subpoena in the context of tribal sovereign immunity); *see also Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1159-60 (10th Cir. 2014) (declining to enforce subpoena on tribal immunity

6

grounds); *Allltel Comms., LLC v. DeJordy*, 675 F.3d 1100 at 1105-06 (8th Cir. 2011) (same).

Eleventh Amendment sovereign immunity may be waived in two circumstances: when Congress abrogates state sovereign immunity through the Fourteenth Amendment, or when the state itself consents to suit. *College Sav. Bank v. Florida Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S. Ct. 2219, 2223 (1999). Without one of these two conditions, the immunity is a bar to "suit," not just liability. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S. Ct. 684, 689 (1993). Moreover, the waiver must be express. *U.S. Env't Prot. Agency v. General Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *amended on rehearing on other grounds*, 212 F.3d 689 (2d Cir. 2000) (ultimately recognizing that in that case sovereign immunity was waived under the Administrative Procedures Act, 5 U.S.C. § 702, which is inapplicable here).

Less clear is whether the more general sovereign immunity can be waived. Such a determination requires an examination of state law. *Beaulieu*, 807 F.3d at 484. At least one court to consider the issue has, one the one hand, concluded that under New York law, sovereign immunity cannot be waived, but then on the other hand acknowledged that in certain cases, where there is extreme delay in invoking the defense, and there is prejudice to the adversary, application of the doctrine is barred. *See Milord-Francois v. New York State Office of the Medicaid Inspector General*, 635 F. Supp. 308, 319-20 (S.D.N.Y. 2022).

Most instructive in applying these rules in the context of sovereign immunity being applied to a non-party subpoena served on a state in course of a federal court litigation is the Fifth Circuit's decision in *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022). In *Russell*, the plaintiffs brought suit in federal court against a local county and its sheriff to enjoin use of a felony-bail system. During the course of the litigation, the plaintiffs served non-party subpoenas on several state court judges seeking information concerning their roles in the creation and use of the system. *Id.* at 510.

Consistent with other decisions applying sovereign immunity to federal agencies and tribes, the Court held that enforcement of the subpoenas would be the type of conduct that sovereign immunity precludes. *Id.* at 513-14. Specifically, the Court, relying on early Supreme Court's decision such as *Ex parte Ayers*, recognized that:

> *The very object and purpose of the eleventh amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties.* It was thought to be neither becoming nor convenient that the several states of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to complaints of private persons, whether citizens of other states or aliens, *or that the course of their public policy and the administration of their public affairs should be subject to and controlled by the mandates of judicial tribunals, without their consent, and in favor of individual interests.*

123 U.S. 443, 505, 8. S. Ct. 164, 183 (1887) (emphasis added by the Fifth Circuit).

Relying on this type of expansive language, and noting that the Supreme Court's use of the disjunctive "or," demonstrates that the doctrine applies either when the state is a defendant **or** when it is subject to other coercive judicial process, such as the subpoenas at issue in that case. *Id.* at 514-15. Other early Supreme Court

cases weigh in favor of the same result. *See id*. at 514 (citing *The Siren*, 74 U.S. (7 Wall,) 152, 154 19 L.Ed. 129 (1868) (noting that states cannot be subject to "legal proceedings" without consent, rather than lawsuits); *see also Dugan*, 372 U.S. at 620, 83 S. Ct. at 1006 (noting that doctrine includes judgments restraining or requiring a government to act).

Applying these standards, the Court concludes that the doctrine of sovereign immunity applies. The OAG is clearly an arm of the state carrying out New York's criminal investigatory and prosecutorial functions. And when the OAG is served with a third-party subpoena, this is exactly the type of coercive judicial process that the Supreme Court cases seem to envision being protected against by sovereign immunity with its recognition that the doctrine covers more than lawsuits in which the State is named as a defendant. Accordingly, and consistent with the Fifth Circuit's analysis in *Russell*, sovereign immunity applies here.

Moreover, the Court finds that there has been no waiver by the state requiring it to respond to the subpoena. Initially, the Court reiterates that any waiver must be express, at least when asserted under the Eleventh Amendment, and at best by untimely invocation causing prejudice when more generally asserted. *College Sav.*, 527 U.S. at 670, 119 S. Ct. at 2223 (Eleventh Amendment); *Milford-Francois*, 635 F. Supp. 3d at 319-20 (general sovereign immunity). Here, the OAG's immunity assertion was timely and Executive Order 147 expressly states that the OAG's authority "displace[s]" and "supersede[s]" that of the county district attorney. To the extent this language can be read to mean something in the context of this motion, the

9

Court interprets it to establish that whatever authority the OAG has, including any authority that a local county prosecutor may not have, it is the OAG's authority that applies. This authority includes immunity from subpoenas that a county prosecutor might otherwise be required to respond to.[1] As a result, no waiver may be found, express or otherwise.[2]

In reaching this conclusion, the Court notes that there is some authority for a contrary outcome. In *In re Missouri Dep't of Natural Resources*, 105 F.3d 434, 436 (8th Cir 1997), the court rejected a non-party state agency claim of sovereign immunity in the discovery context. As the Fifth Circuit recognized in *Russell*, 49 F.4th at 518 n.12, however, the Eighth Circuit's subsequent decision in *Alltel*, 675 F.3d at 1104-05 "casts considerable doubt" on the earlier *Dep't of Natural Resources* decision, and the Court declines to apply it as authority here. For this reason, the Court also finds cases relying on *Dep't of Natural Resources* unpersuasive. *See, e.g.*, *Arista Records LLC v. Does 1-14*, 7:08-cv-00205, 2008 WL 5350246, at *4 (W.D. Va. Dec. 22, 2008) (citing *Dep't of Natural Resources*).

Finally, the Court points out, that while Plaintiff is seeking to enforce its subpoena served on the OAG, it appears that she has not sought similar discovery from non-state entities, and according to the OAG, the vast majority of documents at

---

[1] The act of moving to quash, in and of itself, is insufficient to waive sovereign immunity. *See U.S. Env't Prot. Agency*, 197 F.3d at 598 ("The rules governing discovery and the issuance of subpoenas duces tecum for the production of documents by third parties include no express waivers of the type necessary to subject the government to compulsion in judicial proceedings to which it is not a party.").
[2] The Court recognizes that in promulgating New York Executive Order 147, the issue before the Court may never have been considered. Nevertheless, given that any waiver of sovereign immunity must be express, at least in the Eleventh Amendment context, it should come from the Governor's office, as it issued the original executive order, or be made through the ordinary legislative process.

10

issue are maintained by the NYPD as it was first on the scene, the Nassau County Police Department and the OCME. In fact, according to the OAG, these entities account for approximately 5000 of 5100 documents at issue. *See* DE [60-2] ¶ 7. There is no explanation offered as to why these documents cannot be obtained from these non-state sources. In addition, some of the responsive documents may still be available from the OAG pursuant to the New York Freedom of Information Law. N.Y. Pub. Off. Law § 84 *et seq*. *See* DE [60-1] at 3-4.

For these reasons, the OAG's motion to quash, DE [60], is granted.

### III. CONCLUSION

For the foregoing reasons the motion to quash filed by the Office of the Attorney General of the State of New York, DE [60], is granted.

Dated:     Central Islip, New York
             September 12, 2023

**SO ORDERED.**

/s/ Steven I. Locke
STEVEN I. LOCKE, USMJ